GRAND LODGE OF COLORED K. OF P. *v.* HARRIS.

[68 South. 75]

INSURANCE. *Life policies. Liability of insurance.*

> Where a colored benevolent order had issued a life policy payable to one named as the wife of a member and on his death paid the policy to such named party, who in fact was not the legal wife, the real wife cannot thereafter recover the amount of the policy from the order where it has been guilty of no negligence.

APPEAL from the chancery court of Warren county. HON. E. N. THOMAS, Chancellor.

Suit by Mamie Harris against the Grand Lodge of Colored Knights of Pythias. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

Counsel argue that the original benefit certificate which designated Mamie Harris as the beneficiary,

was still in full force and effect at Harris' death, because, they say, the designation of Mamie Harris in the second policy was inoperative and void, and the suit is predicated upon the idea that the first policy was still in full force and effect. That this is not the law, is squarely decided by our own court in *Carson* v. *Bank*, 75 Miss. 173, where it is said: "As Carson surrendered to the Supreme Lodge of Knights of Pythias the endowment certificate, payable to his wife, Mary Carson, she can predicate no right to this fund of such surrender certificate as it is canceled."

This decision of our court is in line with the authorities elsewhere. See 29 Cyc., page 92, where it is said: "The issuance of a new certificate in lieu of the original operates as a cancellation of the latter."

Let it be further noted that in all the cases cited by appellee, from our own court and elsewhere, no payment had been made by the order before the other contending party propounded a claim. In the majority of cases, the order paid the money into court, and left the contending parties to litigate over the fund. We assert, with perfect confidence, upon reason and authority, that the limit of the right of complainant is to treat Katie Harris, who has been paid the death benefit, as the trustee for the benefit of appellee. That this is sound, see *Carson* v. *Bank*, 75 Miss.——; 1 Bacon on Benefit Societies and Life Insurance (3 Ed.), par. 250B; *Smith* v. *Pinch*, 80 Mich. 332, 45 N. W. 183; *Meyers* v. *Schumann*, 54 N. J. E. 414, 34 Atl. 1066; 2 Bacon (3 Ed.), paragraph 396, at page 992; *Mutual Life Insurance Company* v. *Blodgett*, 8 Tex. Civ. App. 45, 27 S. W. 286; also cases cited Ib.; Sec. 250B., 140 Mass. 590; 143 Mass. 216; and *Story* v. *Association*, 95 N. Y. 474.

It, therefore, appears that counsel for appellee are manifestly in error when they state, on page 13 of their brief: "Mamie Harris was never a stranger to the contract, because the contract was never severed that

existed between her and the order.'' That it was sever-
ed and cancelled is settled by *Carson* v. *Bank,* and the
other authorities cited *supra.*

We respectfully submit that this court should reverse
the decree of the court below, and enter a decree here
for appellant.

*Latham & Latham,* for appellant.

In *Supreme Court, etc.,* v. *Gehenback,* 124 Colo. 43,
56 Pac. 640, it is said: ''The beneficiary named in the
certificate has no interest or property there that her
heirs could succeed to. Her interest was a mere expec-
tancy of an incompleted gift. It was revocable at the
will of the insured and could not ripen into a right until
his death. Her right under the certificate was not un-
like that of an heir apparent and that is not to be
deemed an interest of any kind.'' See, also, *Hoeft* v.
*Supreme Lodge,* 113 Colo. 91, 45 Pac. 185; *Jony* v. *Sup-
reme Council,* 105 No. 1, 94 N. Y. 580.

In *Golden Star Fraternity* v. *Martin,* 59 N. J. L. 207,
35 Atl. 908, the court said: ''By the terms of such con-
tracts (those of benefit societies), the beneficiary may
be changed by the mere will of the member, and without
the beneficiary's consent. In such a case, the right of
the beneficiary is not property, but a mere expectancy,
dependent on the will of the member, to whom the
certificate is issued. For this reason, the beneficiary's
interest in the certificate and contract evidenced there-
by, differs totally from the interest of a beneficiary
named in an ordinary life insurance policy, containing
no provision for the designation of a new beneficiary.
The cases so far as I can discover are agreed upon this
doctrine.''

For other cases in point see *Masonic Benefit Asso-
ciation* v. *Bunch,* 109 Mo. 560; 19 T. M. R. 25; *Hoffman*
v. *Grand Lodge,* 73 Mo. App. 47.

From the foregoing cases, we think it is clear that until the death of the said R. D. Harris, there was no possible way for Mamie Harris to have any interest in the fund of the six hundred dollars; there was no property right in the said Mamie Harris that would have to be granted away by her. Mamie Harris was not a party to the contract, because she had no interest therein, so that she is a stranger to the contract, and the parties to the contract could change it at their will, as they did in this case by substituting the name of Katie L. Harris for the name of the complainant, Mamie Harris, in a new policy.

Our own court, in the case of *Wherry* v. *Latimer,* 60 So. 563, held: "It is clear from the adjudications of this court that Mr. Wherry had the right at any time to change the beneficiary in his certificate and that no one could complain of it," citing *Carson* v. *Bank,* 75 Miss. 167.

In *Splawn* v. *Chew,* 60 Tex. 532, a controversy between an original beneficiary and a new one, the court, in speaking of a change of beneficiary, which did not comply with the laws of the order, said: "But like all such provisions in the by-laws of private corporations it may be waived at the option of the corporation, being for its benefit alone," . . . and again:: "It is still a condition for the benefit of the company, to be insisted upon or waived according to their election." *Aid Society* v. *Lupold,* 101 Pa. St. 111.

Even if a statute of the state of Mississippi made it beyond the power of the appellant to pay anyone but the "widow, children or other heirs" still the appellee should not be heard to complain as it would then be *ultra vires.* Appellee would be a stranger to the contract, and the state of Mississippi would be the only person who could complain of the contract in question. See *New Orleans, etc., R. Co.* v. *Elleman,* 105 U. S. 166; *Old Colony Trust Co.* v. *Michita,* 123 Fed. 762; *Collins*

v. *Rea,* 127 Mich. 273; *Baker* v. *Northwestern Guaranty Co.,* 36 Minn. 185; *Sugar Refn'g Co.* v. *St. Louis Grain Elevator Co.,* 101 Mo. 192.

*Dabney & Dabney,* for appellee.

Knowing the weakness of the race it was gross neg-- lect for this order to issue a policy to the insured in the first place without requiring satisfactory proof of the marriage of the beneficiary where that beneficiary is designated as the insured and the wife of the insured; and how much greater is the degree of negligence and want of regard for the rights of, and its duty towards, the appellee, for it to require the surrender of a policy bearing the name of the appellee, and issue a new policy in its place and stead with the name of Katie L. Harris shown as the beneficiary when this very fact put it on no- tice that there had heretofore been such relations be- tween the insured and this appellee as behooved this ap- pellant to ascertain the true relations between the in- sured and the beneficiary in the old and new policy before issuing the new policy. We contend, therefore, that this appellant had been given notice from the conduct of the insured and from the contents of the first policy sur- rendered to it at the time the policy was issued, that it was its duty not to merely believe from the repre- sentations of the insured that Katie L. Harris was his wife, but to ascertain and know by a proper investi- gation, that the representations made by the insured were true. Failing in this, it failed in an implied duty to this appellee and in paying the amount of the policy to Katie L. Harris, it did so at its peril.

On the question of notice we cite: *Parker* v. *Foy,* 43 M. R. 260; 21 Am. & Eng. Ency. of Law (2nd Ed.), p. 584, 21 Am. & Eng. Ency. page 582. Counsel for appellant contend that it is elementary law that the policy of insurance was the property of Harris, the in- sured, and that he had the power to appoint and name

the beneficiary; that he could name any one whom he chose as a beneficiary unless there was some law or rule ascertaining the appointment to certain persons. Quite true. We agree with him. Section 1, article 1 of the Endowment Laws of appellant order as set out in the agreed statement of facts, provides:

"The grand Lodge Knights of Pythias . . . establishes an endowment branch of the order for the purpose of paying death benefits to the widows and dependent children, or other heirs of deceased members, etc."

It will, therefore, be seen that the insured was limited in his right to name a beneficiary and that only those falling within the class designated by this section of the Endowment Laws could be named such beneficiary.

Did Katie L. Harris, the beneficiary in the second policy fall within this class? No. *Carson* v. *Vicksburg Bank,* 75 Miss. 165, 167; 3 Am. & Eng. Ency. of Law (2nd Ed.), p. 960, *Modern Woodmen* v. *Plunkett,* 17 L. R. A. (N. S.) 1083.

The case at bar is even stronger for appellee than that of *Mary Tutt* v. *Jane Jackson,* in 87 Miss. 207, *et seq.,* because in the *Tutt Case,* Jane Jackson and the insured, her husband, had never divorced but both had married again, while in the case at bar there had been no divorce, and neither party had remarried.

Counsel for appellant in his argument, contained in his brief says, in part, as follows: "It appears to us that the only question to be determined in this matter is whether or not the insurer paid the policy in keeping with its promise made to the insured, or whether or not it has complied with its part of the contract. That is clearly shown to be answered affirmatively by the agreed statement of facts. Unless there was some fraud practiced by the order against the rights of the appellee, she has no cause of complaint against it. She was a stranger and was never intended to be the beneficiary by either party."

We insist that the order must be governed by its by-laws; that it pays the amount of the policy at its peril, and if it pays it to the wrong person, as was done in this case, it did so at its own risk, and in paying the amount of the policy to Katie L. Harris, who was neither "widow, dependent child or other heir" of the said R. D. Harris, but merely a concubine, it did so at its peril, and therefore as Katie L. Harris was not within the class of beneficiaries designated in the by-laws, he could not appoint her his beneficiary, and the order is liable to Mamie Harris, the lawful wife of R. D. Harris, for the amount of the policy.

COOK, J., delivered the opinion of the court.

The policy written by appellant was made payable to "Katie L. Harris, the wife of Brother Knight R. D. Harris." "Brother Knight R. D. Harris" departed this life. Katie L. Harris, the beneficiary named in the policy, probated her claim according to the laws of the order, and the Grand Lodge, in good faith, paid her the sum called for by the policy, believing her to be the widow of deceased. It subsequently developed that Katie was a wife only in name; that Mamie, appellee here, was in fact the only wife owned and possessed by "Brother Knight R. D. Harris" at the moment of his death. This suit was filed by Mamie, the lawful wife of the deceased brother, to recover the amount called for by the policy. The court below thought she was entitled to recover, and so said in its judgment. The Grand Lodge appeals.

A great many court decisions are cited in support of the trial court's judgment. All of these cases at all pertinent to the present case were cases wherein there was a contest between a person of the class eligible under the laws of the order to be made a beneficiary of death benefits and persons not so eligible, with the insurer or some other party acting as stakeholder. In all of these cases

the courts enforced the laws of the order as the law of the case, and held that the legal beneficiary was entitled to the fund. No case has come to our attention wherein the facts are similar to the facts of this case.

We do not understand that the laws of the Grand Lodge compel the lodge to pay to some one of the class mentioned as legal beneficiaries. The member of the lodge who seeks insurance must name the beneficiary. If he names a beneficiary not entitled to share in the benefits conferred by the laws of the order, the Grand Lodge is not required to pay the sum to such named beneficiary. The Grand Lodge, in the present case, was not bound to pay the money to Katie, and if Mamie had propounded her claim before it had been paid to Katie, it may be conceded for the purposes of this case that in a contest between the rival claimants the courts would award the fund to the lawful widow. That is not the case here. The lodge paid the money to the person named in the policy, who, so far as the lodge knew or had reason to believe, was, as she represented herself, the widow of the deceased brother.

We do not believe that the lodge was under any obligations to search the records of all the counties for the purpose of ascertaining whether or not the brother was the owner of more than one wife, or to demand of the claimant that she produce her marriage certificate. Under the peculiar social conditions of the race to which these litigants belong the writing of insurance would be a harmless diversion if the widows were required to prove that their reputed husbands had never married before, or, if so, that they had been legally divorced.

We think the lodge is shown to have been reasonably diligent, and when, under the circumstances, it paid the money to Katie, it was acquitted of all liability.

*Reversed and dismissed.*